UNITED STATES BANKRUPTY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE: BARRY CHRISTOPHER MANGOLD
      MELISSA MANGOLD                                      DEBTOR(S)
                                                                                 CASE NUMBER 15-50973

---

**CREDITOR ALEX DONOGHUE'S RESPONSE TO BARRY MANGOLD'S MOTION FOR SANCTIONS FOR VIOLATION OF DISCHARGE INJUNCTION**

---

Creditor Alex Donoghue ("Mr. Donoghue"), hereby submits the following Response to Debtor Barry Mangold's ("Mr. Mangold") Motion for Sanctions for Violation of Discharge Injunction. In support of his Response, Mr. Donoghue provides an affidavit attached as **Exhibit A**, and states as follows:

## INTRODUCTION

Mr. Mangold moved this Court on November 8, 2019 to reopen this Bankruptcy case, to discharge Mr. Donoghue as a "violating creditor." See Docket Entry 41 [D.E. 41]. After this Court granted his request and reopened the case [D.E. 42], Mangold filed his Motion for Sanctions for Violation of Bankruptcy Injunction [D.E. 43]. Donoghue submits this response to assert:

1) Sanctions are not appropriate as counsel filed suit to collect on Mr. Mangold's debt in good faith and pursuant to the bankruptcy code;

2) Mr. Mangold's Debt to Mr. Donoghue was not discharged as it was excepted pursuant to the Bankruptcy Code (the "Code"), specifically section USC § 523(a)(3), and under 11 USC § 523(a)(2), because the debt arose out of fraud committed by Mr. Mangold, and was not listed on Mr. Mangold's bankruptcy petition, thus denying Mr. Donoghue the

1

opportunity to file an action to determine its dischargeability or to participate in the payout to priority creditors;

3) Mr. Mangold's debt to Mr. Donoghue was for commissions owed on a series of real estate transactions, and therefore constitutes a priority claim under 11 USC § 507(a)(4); and

4) Mr. Mangold fraudulently concealed information in his bankruptcy by not disclosing certain commissions which were earned, in whole or in part, prior to the filing of this Bankruptcy Case, and therefore filed this Bankruptcy Case with the intent to defraud and misrepresent the size of his bankruptcy estate.

## RELEVANT FACTS

The debt at issue arises from an agreement made by Mr. Mangold to pay Donoghue $200,000 in past due commissions on January 8, 2015 [see Contract for Commissions, D.E. 43-2]. The remaining debts referenced in the Circuit Court Case were incurred in July and October of 2018, after Mr. Mangold's the instant bankruptcy case was closed on January 4, 2017 [D.E. 40], after receiving the Trustee's Final Account [D.E. 39] on January 3, 2019. Mr. Mangold contemplated bankruptcy in drafting the Contract for Commissions, stating "The debt shall be binding on his (Mr. Mangold's) estate and heirs and shall not be dissolved by bankruptcy." Continuing his pattern of fraudulent behavior and misrepresentations, Mr. Mangold did not list Donoghue as a creditor so that Donoghue would not have an opportunity to challenge the bankruptcy in any fashion.

Donoghue brought suit against Mr. Mangold and his business, Mangold Real Estate, LLC, for debts owed to Donoghue related to real estate commissions and personal loans in Fayette Circuit Court Case *Donoghue, Alex v. Mangold, Barry et al.;* Case No. 19-CI-3879 (the

Circuit Court Case). See attached **Exhibit B**, Circuit Court Case Complaint. Also named as defendants in the Circuit Court Case are Bob Cole, Coleman Group, LLC, Man-O-War Park Partners, LTD, and Menard, Inc. The suit was brought after Mr. Mangold failed to repay the $200,000 pursuant to the agreement, and the Complaint also includes claims for $10,000 Mr. Mangold owed Mr. Donoghue from a later real estate deal wherein Mr. Mangold only paid Mr. Donoghue $30,000 of the $40,000 commission owed him, and for a personal loan made by Mr. Donoghue in October 2018 in the amount of $3,500.

Although counsel for Mr. Mangold in the Circuit Court Case suggests Mr. Mangold's bankruptcy was "no asset," that is not the case. See attached **Exhibit C**, Mr. Mangold's Motion to Strike and/or Dismiss Complaint. In fact, there was a distribution of $1,335.31 to Mr. Mangold's priority creditors. As set forth below, Mr. Donoghue's debt is a priority claim under § 507 of the Code because it is for commissions earned within 12 months of the filing of this Bankruptcy Case.

Mr. Mangold's debts to Mr. Donoghue are not discharged because they were not scheduled and Mr. Donoghue did not have knowledge of the bankruptcy, denying him the opportunity to present a priority claim, and denying him the opportunity to file an adversary proceeding objecting to the discharge of his debts under 11 USC § 523(a). Therefore, pursuant to 11 USC § 523(a)(3), Mr. Mangold's debt to Mr. Donoghue is excepted from discharge.

Accordingly, case law cited by Mr. Mangold supporting his argument that debts are discharged whether listed in the bankruptcy or not, is not applicable here. Additionally in Circuit Court, Mr. Donoghue filed a Motion for Prejudgment Attachment on Mr. Mangold's assets he was to receive from closing on the Ashgrove Property. During the hearing on the Motion for Prejudgment Attachment on November 8, 2019, Mr. Mangold's counsel asserted that the debt

owed to Mr. Donoghue was discharged in this Bankruptcy Case. Upon hearing arguments of counsel, Judge Ernesto Scorsone in the Fayette Circuit Case ordered Mr. Donoghue to brief the bankruptcy discharge issue asserted by Mr. Mangold. However, Counsel was advised that Mr. Mangold would be moving to reopen the bankruptcy in an attempt to list Mr. Donoghue as a discharged creditor. Therefore, an Agreed Order has been entered in the Circuit Court Case to stay the proceedings until this Court rules on Mr. Mangold's motions

## ARGUMENT

I. **SANCTIONS ARE NOT APPROPRIATE AS COUNSEL FILED THE CIRCUIT COURT CASE IN GOOD FAITH RELYING ON TO 11 U.S.C. § 523(a) WHICH PROVIDES THAT MR. MANGOLD'S DEBT TO DONOGHUE WAS EXCEPTED FROM DISCHARGE**

Mr. Mangold did not list his debt to Mr. Donoghue in his 2015 Bankruptcy Petition [D.E. 1] and the trustee did not include Donoghue as a creditor in the final report [D.E. 36]. The Bankruptcy Code provides a list of exceptions to discharge in 11 U.S.C. § 523:

> (a) A discharge under section 727, 1141, 1192 1 1228(a), 1228(b), or 1328(b) of this title does *not* discharge an individual debtor from any debt-
>
> (3) *neither listed nor scheduled* under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, *in time to permit-*
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, *timely filing of a proof of claim*, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

Accordingly, if a debt is not listed in the bankruptcy in time to permit the timely filing of a proof of claim, the debtor is not discharged from the unlisted debt unless the creditor had notice or actual knowledge of the bankruptcy.

Although Mr. Mangold mentioned filing bankruptcy previously, as set forth below, and in Mr. Donoghue's Affdiavit, Mr. Donoghue did not know that Mr. Mangold did in fact file bankruptcy. When Mr. Mangold's bankruptcy was converted to an asset Chapter 7, the important next step was to provide notice to all creditors who had a claim. Mr. Donoghue was not noticed as Mr. Mangold failed to include Donoghue as a creditor. Therefore, Donoghue had no opportunity to file a proof of claim in Mr. Mangold's bankruptcy; as set forth below, Mr. Donoghue had the right to file a priority claim, which would have entitled him to a distribution ahead of the taxing authorities who were paid. This situation falls under the exception provided in 11 USC § 523(a)(3)(A) and Mr. Mangold's debt to Mr. Donoghue was therefore not discharged.

Additionally, due to evidence that Mr. Mangold obtained discharge of his debts fraudulently, as described in detail below, Donoghue asserts that the debts are also excepted pursuant to 11 U.S.C. § 523(a)(2), (4) and/or (6). As set forth below, Mr. Mangold's failure to include Mr. Donoghue's debt on his schedules prevented Mr. Donoghue from filing an adversary proceeding objecting to the discharge of his debt.

## II. CONTROLLING CASELAW SUPPORTS EXCEPTION TO DISCHARGE IN CHAPTER 7 ASSET BANKRUPTCY

Mr. Mangold cites the case related to discharge of Chapter 7 non-asset bankruptcies to support his argument that the debt to Donoghue is discharged. *In re Madaj*, 149 F.3d 467 (6th Cir. 1998). However, *In re Madaj* dealt with a no-asset bankruptcy. Mr. Mangold's bankruptcy was converted to an asset bankruptcy on July 8, 2015 [D.E.21]. Accordingly, *Madaj* is distinguishable from this case. Although the assets here were not excessive, *Madaj* does not stand for discharge in minimal, low, or limited asset bankruptcies: its holding is specific to no asset bankruptcies.

This is particularly true where, as here, the claim is a priority claim. As § 507(a)(4) of the Code provides, wage claims are priority claims:

> (4) Fourth, allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for-(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 USC § 507(a)(4)

Thus, Mr. Donoghue would have been entitled to present a priority claim for $10,000 of his claim in this Bankruptcy Case, had he been properly notified of the filing. Section 507 of the Code defines the order in which priority payments are to be made. Wages and commissions are granted fourth priority by § 507(a)(4), while taxes owed to governmental entities are of eighth priority, under § 507(a)(8). Therefore, had Mr. Mangold properly scheduled Mr. Donoghue's debt, Mr. Donoghue would have received the distribution that otherwise went to the two governmental tax agencies, the IRS and the Kentucky Department of Revenue, that were actually paid. While Mr. Donoghue understands that having been paid $1,335.31 would not have satisfied his $10,000 priority claim for commissions, it would have paid over 10% of it, a better result than he got, which was payment of no part of it, with no opportunity to object.

This is also particularly true here, where Mr. Donoghue's debt was the result of fraud. This is set out in Mr. Donoghue's affidavit, filed herewith, in which Mr. Donoghue testifies that, when Mr. Mangold was contemplating filing for protection under the bankruptcy laws, he told Mr. Mangold that he was planning to file a bankruptcy proceeding, but that he would not name

Mr. Mangold as a creditor in that proceeding. He further told Mr. Donoghue that, because he was not going to name Mr. Mangold as a creditor, the result would be that while all of his other debts would be discharged in the Chapter 7 proceeding, Mr. Donoghue's debt would survive, undischarged, and that Mr. Mangold would make arrangements to pay it after the bankruptcy proceeding was concluded. After Mr. Mangold made these statements, Mr. Donoghue heard nothing further from him, and had no knowledge that the bankruptcy proceeding had actually been filed, or that he had not been named as a creditor therein, even though Mr. Mangold knew very well prior to the filing of this case that Mr. Donoghue was a legitimate creditor. Therefore, not only is the debt nondischargeable as a result of fraud, Mr. Mangold's failure to schedule it is not inadvertent: He deliberately decided not to include the debt in the bankruptcy proceeding, denying Mr. Donoghue the opportunity not only to object to its dischargeability under § 523(a)(2) of the Code, but further denied him the right to participate as a priority creditor in the distribution, small as it was, of the assets of the Estate.

This Court should overrule Mr. Mangold's Motion in its entirety and further reopen this case to allow Mr. Mangold to present his claim that the debt from Mr. Mangold is nondischargeable as fraudulent under § 523(a)(2) of the Code, and further, as set forth below, that Mr. Mangold misrepresented the assets in the estate by failing to report commissions he had partially earned and would collect after the close of this case.

### III.    MR. MANGOLD VIOLATED 11 USC 727 BY CONCEALING COMMISSIONS PAID DURING HIS BANKRUPTCY

Mr. Mangold participated in multiple real estate sales within one year prior to and during the pendency of his bankruptcy, which are not reflected in any of the bankruptcy filings. Two properties sold for $1,300,000 on August 31, 2015 on Broadway in Lexington, another set of properties in Lexington sold for $1,100,000 and $1,700,000 on November 20, 2015, and the

7

transaction that Mr. Mangold worked with Kentucky Employers Mutual Insurance Company closed in September 2016 for $4,882,000. (see attached **Exhibit D**, Property Valuation pages showing the sales). There is further evidence that Mr. Mangold expected to receive commissions on real estate deals with the Kentucky Employers' Mutual Insurance Company (KEMI) as addressed in the "EXAMINATION OF CERTAIN POLICIES, PROCEDURES, CONTROLS, AND FINANCIAL ACTIVITIES OF THE KENTUCKY EMPLOYERS' MUTUAL INSURANCE COMPANY, MIKE HARMON AUDITOR OF PUBLIC ACCOUNTS," published in April 2019. See attached **Exhibit E**, KEMI Audit. This assessment of the KEMI Manager included his relationship with Mr. Mangold and Mangold Real Estate, who was hired as a broker. This was clearly an ongoing relationship wherein Mr. Mangold provided services and received compensation, part of the compensation received as an advancement prior to when it was due and owing.

The KEMI Audit on page 32 provides the nature of Mr. Mangold's relationship with KEMI: "Upon inquiry KEMI stated, 'Mangold provided a full array of real estate consulting services which began in February 2015 and ended at property closing on [September 9, 2016]. The services provided would include all services listed in both agreements.'" In addition to their deposition of the KEMI Manager, the audit references two agreements which provide a source for this information related to Mr. Mangold, (1) KEMI Real Estate Consulting Agreement with Barry Mangold and Mangold Real Estate effective March 1, 2015; and (2) KEMI Broker and Consulting Agreement with Barry Mangold effective May 4, 2016. The 2015 agreement, effective just two months prior to Mr. Mangold's bankruptcy filing, provides: "Mangold will receive, as compensation for its services under this Agreement, fees in the amount of $10,000." Additionally, "[t]he May 4, 2016, agreement states that KEMI has paid the Broker a $25,000

advance of this agreement. KEMI indicates that the $10,000 paid in association with the March 1, 2015 Consultant Agreement on December 2015 is part of that advance and part of the 1% additional compensation KEMI agreed to pay through the May 4, 2016 agreement."

This initial information shows evidence of Mr. Mangold's concealment of his existing and/or expected income. This had the effect of minimizing the size of his bankruptcy estate and effectively hiding his commissions from his creditors. The Trustee's Motion to Extend Time to Object to Discharge shows there was at least an appearance of impropriety, concealment or other deceptive actions by Mr. Mangold surrounding his bankruptcy. As stated in Paragraph 5: "The United States Trustee is investigating potential violations of 11 U.S.C. § 727 by the Debtors." [D.E. 28]. The Trustee cites the section of the bankruptcy code that relates to conditions that prohibit granting a debtor discharge. The following subsections are relevant to this issue:

> The grounds for denial of discharge provided in 11 U.S.C. 727 (2-3) center on the debtor's wrongdoing in or in connection with the bankruptcy case. If the debtor, with intent to hinder, delay, or defraud his creditors or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed, or has permitted any such action with respect to, property of the debtor within the year preceding the case, or property of the estate after the commencement of the case, then the debtor is denied discharge. The debtor is also denied discharge if he has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any books and records from which his financial condition might be ascertained, unless the act or failure to act was justified under all the circumstances of the case….The fourth ground for denial of discharge is the commission of a bankruptcy crime the making of a false oath or account, the use or presentation of a false claim, the giving or receiving of money for acting or forbearing to act, and the withholding from an officer of the estate entitled to possession of books and records relating to the debtor's financial affairs….The fifth ground for denial of discharge is the failure of the debtor to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities.

SENATE REPORT NO. 95-989. It follows that the Trustee had reason to become concerned enough to investigate further into Mr. Mangold's activities surrounding his bankruptcy. Subsection (d) of this same section "requires the court to revoke a discharge already granted in certain circumstances. If the debtor obtained the discharge through fraud, if he acquired and

concealed property of the estate, or if he refused to obey a court order or to testify, the discharge is to be revoked." 11 USC § 727(d).

Accordingly, Mr. Donoghue requests leave of the Court to present evidence to support his position that Mr. Mangold obtained discharge through fraud, due to the issues described above.

## CONCLUSION

Mr. Donoghue objects to Mr. Mangold's Motion as sanctions are inappropriate due to the undersigned pursuing payment in good faith pursuant to 11 USC 523(a)(2) and further asserts that case law supporting such discharge is distinguishable from this bankruptcy action. Additionally, Mr. Donoghue submits this Response to request an opportunity to present his argument that Mr. Mangold fraudulently obtained discharge under Chapter 7 as an initial review shows evidence of concealment and deceit in Mr. Mangold's bankruptcy disclosures and his pre and post-petition dealings. Further, as shown by the Affidavit of Mr. Donoghue, Mr. Mangold's failure to list him as a creditor on his bankruptcy schedules was not inadvertent. Mr. Mangold knew quite well that Mr. Donoghue was his creditor, and the exact nature of his claims, but deliberately chose not to schedule them, denying Mr. Donoghue the opportunity to present a priority claim, and further denying him the opportunity to file an adversary proceeding objecting to the discharge of his debt on the ground that it was induced by fraud. 11 USC § 523(a)(2).

Respectfully submitted,

*/s/Andre F. Regard*
Andre F. Regard (KBA #88254)
Ivey L. Workman (KBA #98206)
Regard Law Group, PLLC
234 North Limestone
Lexington, Kentucky 40507
**Counsel for Alex Donoghue**

10

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing, was filed electronically with the Clerk of the Court via the CM/ECF system providing notice to the following persons this 19th day of November 2019.


James D. Lyon, Trustee
100 E Vine Street
STE 404
Lexington, KY 40507
**Counsel for Mangold**


                                                                      */s/ Andre F. Regard*
                                                                      **Counsel for Donoghue**